# In the United States Court of Federal Claims

No. 16-709L

(E-Filed: January 26, 2018)

|  |  |  |
|---|---|---|
| BASSETT, NEW MEXICO LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Takings; Claim Alleging Denial of |
| | ) | Access to Real Property; RCFC |
| v. | ) | 12(b)(1); Claim Not Ripe Where No |
| | ) | Application for Right-of-Way |
| THE UNITED STATES, | ) | Completed. |
| | ) | |
| Defendant. | ) | |

Roger J. Marzulla, Washington, DC, for plaintiff. Nancie G. Marzulla, Washington, DC, of counsel.

Laura Duncan, with whom was Jeffrey H. Wood, Acting Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge.

The court has before it defendant's motion to dismiss, ECF No. 19, which is brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). This motion has been fully briefed, along with a notice of supplemental authority filed by defendant, ECF No. 26, and plaintiff's response thereto, ECF No. 27. Oral argument was neither requested by the parties nor deemed necessary by the court.

The subject of plaintiff's takings claim is approximately 66 acres of unimproved land which is alleged to be "surrounded by federal land." Am. Compl., ECF No. 16 at 1-2. The complaint further alleges that the United States Bureau of Land Management (BLM) has denied plaintiff all access to its property. Id. at 5. For the reasons stated below, defendant's motion to dismiss pursuant to RCFC 12(b)(1) is **GRANTED**.

I.       Factual Background[1]

Plaintiff's parcel is located in Doña Ana County, New Mexico.  ECF No. 16 at 1.  At the time of purchase in 1994, access to the parcel existed along a road "that crossed federal, state and private lands."  Id. at 3.  Plaintiff refers to this road as the "cherry-stem" road, which connects plaintiff's parcel, itself surrounded by federal land, along a "right-of-way" that crosses, first, federal land, then state land, then private land, to reach a public road.  Id. at 3-4.

In 1998, the owners of the private land at the end of the cherry-stem road blocked access along this road by locking their gates.  Id. at 4.  Plaintiff then turned to the State of New Mexico (State) for permission to branch off the cherry-stem road, to traverse state land, and to reach the public road by avoiding the private property and its locked gates.  Id.  The State twice denied plaintiff's requests, once in February 1998 and again in April 1998.  Id.

In 2012, plaintiff began to plan for development of its parcel into a "high-end residential community."  Id. at 5.  To gain access to a public highway over BLM land, plaintiff "learned that the process involved making an application for right-of-way to the Albuquerque regional" BLM office.  Id.  On March 26, 2014, plaintiff filed such an application with BLM.  Id. at 6.  Plaintiff later asked for more time "to complete this application," and for permission to enter BLM land to survey the proposed right-of-way.  ECF No. 16-2 at 2.  On May 14, 2014, BLM granted plaintiff's request for more time and for permission to survey the proposed right-of-way.  ECF No. 16-4 at 2.  BLM also noted that plaintiff would have a "higher possibility" of receiving a right-of-way along the "existing" cherry-stem road than along the alternative route proposed by plaintiff in 2014.  Id.

Plaintiff never completed its BLM right-of-way application.  See ECF No. 16 at 8-9 (noting that "completing an application" would have cost "tens of thousands of dollars").  Instead, this suit was filed on June 17, 2016.  In the interim period of time, the federal land surrounding plaintiff's parcel was declared a national monument, the Organ Mountains-Desert Peaks National Monument (National Monument).  ECF No. 16 at 7.  The court reserves -- for the analysis section of this opinion -- its review of the other relevant facts alleged in the amended complaint.

---

[1]      All document references and page citations are to the electronic record preserved in the court's Case Management/Electronic Case Files (CM/ECF) system.  The exhibits to the Amended Complaint, ECF No. 16, are filed under ECF Nos. 16-1 through 16-7.  The exhibits to plaintiff's opposition brief, ECF No. 24, are filed under ECF Nos. 24-1 through 24-3.

II.     Standard of Review for Motions Brought Under RCFC 12(b)(1)

When reviewing a complaint to determine its jurisdiction over a plaintiff's claims, this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted). However, "[a] trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint." Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003) (citations omitted). Plaintiff bears the burden of establishing subject matter jurisdiction, Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)), and it must do so by a preponderance of the evidence, Reynolds, 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

III.    Analysis

The court has considered all of the parties' arguments about the takings claim presented in the amended complaint. Rather than address each dispute as it is presented in the parties' briefs, the court conducts its own analysis of the amended complaint.

The threshold issue for the court is whether plaintiff's claim is for a physical taking, rather than a regulatory taking. The next issue is whether plaintiff's takings claim is ripe. In its analysis of these issues, the court relies almost exclusively on binding precedent provided by decisions of the United States Supreme Court, the United States Court of Claims and the United States Court of Appeals for the Federal Circuit.[2]

A.      Are All Denial of Access Takings Claims Physical Takings?

Plaintiff argues that takings claims based on the denial of access to real property are necessarily physical (also known as per se) takings, not regulatory takings, and insists: "When the Government denies all access to private land, whether by physical obstruction or by statute or regulation, the cases uniformly hold this to be a per se or physical taking." Pl.'s Opp., ECF No. 24 at 7 (citations omitted). The court, however, cannot agree.

---

[2]     Decisions of the United States Court of Federal Claims do not bind the court in this matter. See, e.g., W. Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court.").

3

The court has considered each of the following cases specifically referenced by plaintiff in support of its broad statement that all denial of access takings claims are physical takings claims: Armijo v. United States, 663 F.2d 90 (Ct. Cl. 1981); Laney v. United States, 661 F.2d 145 (Ct. Cl. 1981); Foster v. United States, 607 F.2d 943 (Ct. Cl. 1979); Bydlon v. United States, 175 F. Supp. 891 (Ct. Cl. 1959).  But none of these opinions clearly states that a denial of access to property should always be classified as a physical taking, rather than as a regulatory taking.  Indeed, the distinction between physical and regulatory takings was not of primary concern in any of these cases.  And, in fact, in Bydlon, the court's analysis relied heavily on a regulatory takings analysis and cited Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922) (Pennsylvania Coal), in support of its finding that a "way of necessity" had been taken by government action. 175 F. Supp. at 900.  Thus, the court finds no support for plaintiff's proposed rule that all denial of access claims are physical takings claims.

It is true that, in some cases, denial of access takings claims may be classified correctly as physical takings claims.  In one opinion, for example, the Federal Circuit stated that no physical taking of water rights occurred because the government "neither physically appropriated nor denied meaningful access to [the claimants'] water rights."[3] Washoe Cty., Nev. v. United States, 319 F.3d 1320, 1326 (Fed. Cir. 2003) (Washoe County).  It is also true that a regulatory takings analysis may be employed when the denial of access is related to a regulatory act or to a permitting process.  See Bydlon, 175 F. Supp. at 900; cf. Palmyra Pac. Seafoods, L.L.C. v. United States, 561 F.3d 1361, 1370-71 (Fed. Cir. 2009) (citing Bydlon and Laney for the statement of law that "a regulation that prevents a property owner from accessing private property would implicate a cognizable property interest for purposes of the Fifth Amendment").  Thus, the court concludes that the particular facts underlying a denial of access takings claim determine whether that claim should be analyzed under a physical takings framework or a regulatory takings framework.

The question here is whether the government action at issue tends more toward a physical blocking of access to the claimant's parcel of land, or a regulatory denial of a

---

[3]   Water rights takings claims, such as the claim discussed in Washoe Cty., Nev. v. United States, 319 F.3d 1320 (Fed. Cir. 2003), are often classified as physical takings claims.  See Casitas Mun. Water Dist. v. United States, 556 F.3d 1329, 1333 (Fed. Cir. 2009) (noting that "a reason for treating Casitas' water differently than the coal, trees, and other property involved in the regulatory takings cases" is because "[t]he Supreme Court has repeatedly found water diversions to be physical takings") (citations omitted).  Water rights are not involved in this case.

claimant's application for access to its land. The case law provides that a physical takings analysis is appropriate in circumstances involving a physical impediment to access. See, e.g., Estate of Hage v. United States, 687 F.3d 1281, 1290 (Fed. Cir. 2012) (stating that a fence built around water sources which denied the owners of water rights access to the water could constitute a physical taking); Roth v. United States, 73 Fed. Cl. 144, 148 (2006) ("It is well-settled that a closure in which defendant physically bars access to lands comprises a physical taking."). But, if access is compromised by a change in the applicable law, the case law instructs that a regulatory takings claim analysis is more appropriate.[4] See Bydlon, 175 F. Supp. at 897-900 (finding that when an Executive Order cuts off all reasonable access to plaintiffs' remote resorts, which was formerly accessible by airplane, a regulatory taking had occurred); cf. Pete v. United States, 531 F.2d 1018, 1034-35 (Ct. Cl. 1976) (holding that when the owners of large custom-built houseboats could no longer use the boats in a newly-created and highly-regulated wilderness area, and also could not remove the boats economically, a regulatory taking had occurred) (citing Pennsylvania Coal, 260 U.S. at 415).

The court now turns to the relevant facts in this case.

B.   Do the Facts Alleged in the Amended Complaint Allude to a Physical Taking or to a Regulatory Taking?

As a threshold matter, the court notes that plaintiff has repeatedly contended that its claim is for a physical taking, not a regulatory one. ECF No. 16 at 1; ECF No. 24 at 7. The court's task, however, is to discern the "true nature" of the claim. See Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994) ("Regardless of the characterization of the case ascribed by [a plaintiff] in its complaint, we look to the true nature of the action in determining the existence or not of jurisdiction.") (citations omitted). An examination of the "true nature" of a claim is intended to prevent a plaintiff from cloaking its claim for a regulatory taking in the guise of a physical taking. See Boise Cascade Corp. v. United States, 296 F.3d 1339, 1354 (Fed. Cir. 2002) ("We agree with the Oregon Court of Appeals that Boise's argument is merely an attempt to convert a regulatory takings claim . . . into a per se taking governed by . . . more generous rule[s].") (citations omitted). Such an inquiry into the "true nature" of a claim is especially important where, as here, ripeness concerns may prevent a court from considering the regulatory takings claim before it. See id. As the Federal Circuit has stated, an unripe regulatory takings claim is not redeemed by being mischaracterized as a physical takings claim:

---

[4]   To the extent that the court's view of denial of access takings claims differs from any statements of law in the Court of Federal Claims cases cited by plaintiff, the court respectfully disagrees with the proposition that all denial of access claims are necessarily physical takings claims. Cf. ECF No. 24 at 16-19 (citing non-binding precedent for this proposition).

5

>This is a classic example of a regulatory taking problem, not, as the Court of Federal Claims believed, an example of a physical taking. Once viewed from the proper perspective, i.e., as a claim for a regulatory taking, it becomes clear that Appellee's claim is not ripe.

Stearns Co. v. United States, 396 F.3d 1354, 1357-58 (Fed. Cir. 2005).

The takings claim here hinges on three government actions identified by plaintiff in its amended complaint and discussed in its opposition brief. First, there is the 2012 BLM change in policy which, according to plaintiff, restricted BLM's authority to grant new road access to landlocked parcels surrounded by BLM wilderness areas. ECF No. 16 at 6-7; ECF No. 24 at 9. Second, there is the 2014 creation of the National Monument surrounding plaintiff's parcel that created a change in the status of this federal land which, according to plaintiff, further restrains BLM from granting new road access to plaintiff's land. ECF No. 16 at 7-8; ECF No. 24 at 10. Finally, plaintiff references a number of communications between plaintiff and BLM between 2012 and August 2017 which, according to plaintiff, confirm that BLM will not grant plaintiff a right-of-way across federal land so that plaintiff may access its 66-acre parcel. ECF No. 16 at 5-6; ECF No. 24 at 8, 10.

Notably absent from plaintiff's recitation of facts is any mention that BLM erected a fence or another type of barrier that prevents plaintiff from using the cherry-stem road, or any other potential road, to access its property. Nor is BLM alleged to have taken any specific actions that would dissuade access, such as those that were at issue in the physical takings case, Eyherabide v. United States, 345 F.2d 565 (Ct. Cl. 1965).[5] In Eyherabide, the United States interfered with access to plaintiffs' ranch by: (1) leaving warning signs in place that erroneously indicated that plaintiffs' ranch was part of a federal military gunnery range; (2) providing inaccurate military maps that included the ranch within that gunnery range; (3) making numerous incursions onto the ranch, including intimidating visits by military personnel; and, (4) dropping large items from airplanes on or near the ranch. Id. at 568-69. In contradistinction, here BLM is alleged only to have stated that an application for a new right-of-way to access plaintiff's land would be denied, but that a right-of-way that traced the cherry-stem road could be granted. ECF No. 24-1 at 2. The court therefore finds no indication of a physical takings claim in the amended complaint.

---

[5]   Nor can this case be termed a "hybrid" situation, as in Drakes Bay Land Co. v. United States, 424 F.2d 574, 584 (Ct. Cl. 1970), where extensive land purchases by the Park Service all around the parcel in question, as a National Seashore was being created, led to a taking of the claimant's parcel.

6

Because BLM's consideration of plaintiff's request for a right-of-way across federal land is more akin to a regulatory takings scenario, rather than a physical takings scenario, it is the court's view that the amended complaint in this suit reflects a regulatory takings claim.  The court must determine next whether the ripeness doctrine bars that claim.  First, however, the court must consider whether the ripeness inquiry should be conducted under RCFC 12(b)(1), or, as plaintiff argues, under RCFC 12(b)(6).  See ECF No. 24 at 34-35.

      C.      Is the Ripeness Inquiry for a Takings Claim Properly Conducted Under RCFC 12(b)(1)?

Relying on McGuire v. United States, 707 F.3d 1351 (Fed. Cir. 2013), plaintiff argues that "a ripeness inquiry into administrative exhaustion is not jurisdictional, and must therefore be determined under Rule 12(b)(6)."  ECF No. 24 at 35.  The court does not agree.  The relevant statement in McGuire upon which plaintiff relies is as follows:

> In Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 734, 117 S. Ct. 1659, 137 L. Ed. 2d 980 (1997), the Court similarly concluded that exhaustion requirements associated with "regulatory takings claim[s]" are "prudential hurdles," not jurisdictional ones.

707 F.3d at 1358 (alteration in original).  The court notes that nowhere in McGuire does the Federal Circuit discuss whether the ripeness inquiry should proceed under RCFC 12(b)(1) or RCFC 12(b)(6).  The Federal Circuit, however, does indicate that the ripeness inquiry is a threshold consideration.  McGuire, 707 F.3d at 1357 (citing Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001)).

The question, then, is whether the inquiry into the ripeness of regulatory takings claims can be considered, along with other threshold issues, under RCFC 12(b)(1).  In Suitum, the Supreme Court addressed this inquiry, framing it as "whether Suitum's claim of a regulatory taking of her land in violation of the Fifth and Fourteenth Amendments is ready for judicial review under prudential ripeness principles."  520 U.S. at 733.  The Court added "'that [the] ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"  Id. n.7 (quoting Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993)) (emphasis added).  The Court has further observed that ripeness may be raised by a court sua sponte, just like a concern that is strictly jurisdictional.  E.g., Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003) (citation omitted).  Thus, in this court's view, it is proper to dispose of a threshold matter such as ripeness when this court decides, under RCFC 12(b)(1), whether it should exercise jurisdiction over a case.  See, e.g., Washoe County, 319 F.3d at 1325 (holding that because the "Appellants' takings claim is ripe for review . . . the Court of Federal Claims properly exercised jurisdiction").

7

Support for this approach to the ripeness inquiry can be found in the affirmance of a recent decision of this court. In Freeman v. United States, 124 Fed. Cl. 1 (2015) (Freeman I), aff'd, 875 F.3d 623 (Fed. Cir. 2017), the court dismissed a regulatory takings claim for lack of subject matter jurisdiction because it was not ripe. Freeman I, 124 Fed. Cl. at 8. The ripeness question was considered under RCFC 12(b)(1). Id. at 2. The Federal Circuit affirmed and noted, in particular, that the plaintiffs bore the burden of establishing jurisdictional facts in that case. Freeman v. United States, 875 F.3d 623, 627-28 (Fed. Cir. 2017) (Freeman II) (citation omitted); see also McGuire, 707 F.3d at 1360 (noting that the plaintiff in that case bore the burden of establishing the ripeness of his regulatory takings claim). Reading McGuire and Freeman II together, the court finds that the threshold inquiry into the ripeness of a regulatory takings claim is properly conducted under RCFC 12(b)(1).

> D.  Is Plaintiff's Regulatory Takings Claim Ripe?

Generally, when a landowner elects not to complete an application to receive permission for the land use at issue in a legal action, the takings claim against the government authority is deemed unripe. E.g., Barlow & Haun, Inc. v. United States, 805 F.3d 1049, 1059 (Fed. Cir. 2015); see also Howard W. Heck & Assocs., Inc. v. United States, 134 F.3d 1468, 1472 (Fed. Cir. 1998) (stating that the claimant's failure to submit additional required information to accompany its application for a permit rendered its regulatory takings claim unripe). Even when an applicant faces a likely denial, the applicant's takings claim does not become ripe before the administrative process is exhausted. Barlow & Haun, 805 F.3d at 1058 (citing Corus Staal BV v. United States, 502 F.3d 1370, 1379 (Fed. Cir. 2007)). As the Supreme Court has stated:

> Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law. As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established.

Palazzolo, 533 U.S. at 620-21 (citing Suitum, 520 U.S. at 736 & n.10). The Federal Circuit, as well, has stated that the lack of a final decision on a completed application hampers the court's ability to apply the Penn Central factors to determine if a regulatory taking has indeed occurred. McGuire, 707 F.3d at 1359 (citing MacDonald, Sommer & Frates v. Yolo Cty., 477 U.S. 340, 348 (1986); Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 190 (1985); Penn Cent. Transp. Co. v. New York City, 438 U.S. 104 (1978)).

8

Here, plaintiff has not submitted a complete application for a right-of-way to BLM. BLM therefore has not issued a final decision on plaintiff's request for a right-of-way to cross federal lands to access its property from a public road. Unless the futility doctrine applies, see infra, plaintiff's regulatory takings claim is not yet ripe and it must be dismissed under RCFC 12(b)(1).[6]

      E.      Is Plaintiff's Application to BLM for a Right-of-Way Futile?

It is beyond cavil that a claimant need not request an administrative final decision when the agency does not possess the discretion to grant a particular land use. McGuire, 707 F.3d at 1361 (citing Greenbrier v. United States, 193 F.3d 1348, 1359 (Fed. Cir. 1999)). The futility of such a request excuses a claimant's failure to seek a final decision from an administrative authority. Id. It is also futile to make such a request in a circumstance in which an agency has made clear, through its prior conduct, that no application for the requested land use will be granted. Id. (citing Wyatt v. United States, 271 F.3d 1090, 1097 (Fed. Cir. 2001)). In Washoe County, the Federal Circuit found that a "reasonable degree of certainty" as to the denial of a land use application was a factor that could -- and did -- support a finding of futility. 319 F.3d at 1324.

Plaintiff asserts that this case involves both types of the described futile circumstances, thereby defeating the government's ripeness challenge to its takings claim. ECF No. 24 at 27-34. After analyzing the 2012 BLM policy change, the 2014 National Monument designation, and various communications between BLM and plaintiff, plaintiff urges the court to conclude that:

> Given reasonable inferences in favor of [plaintiff] under Rule 12(b)(6), these alleged facts establish that it is plausible that BLM would not authorize [plaintiff's] right-of-way and therefore the permissible uses of [its] property are known to a reasonable certainty.

ECF No. 24 at 34.

---

[6] Although the ripeness inquiry presented here addresses plaintiff's regulatory takings claim, a physical takings claim, on these facts, would fare no better. In Washoe County, a ripeness inquiry was conducted for a physical takings claim that was allegedly effected by a fruitless permitting process. 319 F.3d at 1323-25. The same ripeness requirement that typically applies to regulatory takings claims, i.e., that the claimant complete an application to obtain a final decision from the administrative authority, was, in Washoe County, applied to a physical takings claim. Id. at 1324-25. Thus, under Washoe County, any physical takings claim presented in plaintiff's amended complaint is also not ripe.

9

The court notes, first, that the ripeness inquiry here is conducted under RCFC 12(b)(1) and that disputed facts which might establish the futility of plaintiff's application before BLM for a right-of-way are to be weighed by the court. <u>Ferreiro</u>, 350 F.3d at 1324. Further, to the extent that the futility of the right-of-way application is a legal conclusion contained within the amended complaint, that legal conclusion is not accorded favorable inferences. <u>See, e.g.</u>, <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (citations omitted). With these standards in mind, the court turns to the parties' factual allegations regarding BLM's discretion to grant a right-of-way and the prospects that plaintiff's application for a right-of-way would be denied by BLM.

       1.      Discretion

According to plaintiff, neither the 2012 BLM policy change nor the 2014 National Monument designation affords BLM the discretion to grant a right-of-way that would allow plaintiff to access its landlocked parcel from a public highway. Plaintiff undercuts its own argument, however, by also acknowledging the possibility that a right-of-way could be granted across federal land along the cherry-stem road. ECF No. 24 at 35-36. Moreover, plaintiff fails to address in its argument the fact that plaintiff and defendant entered into negotiations to discuss a possible right-of-way solution to plaintiff's access problem well after the 2012 BLM policy change and the 2014 National Monument designation were put into place. <u>Id.</u> at 12. These facts suggest to the court that BLM has some discretion to grant a right-of-way that might provide access to plaintiff's land, although the exact mechanism by which plaintiff might be able to access a public road from, for example, the cherry-stem road, remains uncertain. <u>See</u> Def.'s Reply, ECF No. 25 at 16 n.6 (suggesting that the cherry-stem road, plus a right-of-way over state land, might provide access to the parcel in question).

       2.      No Reasonable Certainty of Denial of the Application

Plaintiff highlights a number of communications with BLM which, in plaintiff's view, show that BLM would never grant a right-of-way to plaintiff's property except along the cherry-stem road. ECF No. 24 at 8, 12, 15, 25-27, 29-31, 34. It is important to note, however, that BLM has never had a completed right-of-way application from plaintiff before it. There are a number of formal procedural steps that such an application would trigger, some of which would helpfully inform whether reasonable access to plaintiff's parcel could be gained and what alternatives BLM and plaintiff might choose to consider. <u>See</u> ECF No. 19 at 25 n.10. The record before the court provides no reasonable certainty as to the disposition of plaintiff's application for a right-of-way, because, at this time, so little is known about the completed application plaintiff would

submit or the administrative consideration that such a completed application would receive.[7]

The court is mindful of the expense of a completed right-of-way application, which plaintiff estimates to be in the tens of thousands of dollars. ECF No. 16 at 8-9. The court is also mindful of the expense associated with litigating a regulatory takings claim. To proceed further before the court, plaintiff must satisfy its burden as to ripeness. McGuire, 707 F.3d at 1360. But because so many of the facts relevant to plaintiff's claim are yet unknown or are disputed, and because the futility of plaintiff's right-of-way application, as yet incomplete, has not been shown, plaintiff has not met its burden.

The court further observes that – consistent with the allegations in the amended complaint -- federal, state and private land currently block reasonable access to plaintiff's property, a factual circumstance that frustrates any "easement of necessity" analysis until plaintiff's application process is complete. Cf. id. at 1364 (stating that "all means of access to the property must be cut off by the regulation to warrant a cognizable easement of necessity" (citing Laney, 661 F.2d at 149)) (emphasis added). It is only through final administrative action by BLM that a regulatory takings analysis, weighing every significant factor (including the Penn Central factors), could provide plaintiff with any meaningful relief from this court. See id. at 1359. In this case, the application process would show, through the precise application of regulatory constraints, whether the United States has taken any property interest of plaintiff. Palazzolo, 533 U.S. at 620-21. Until that application process has been completed, however, plaintiff's takings claim is not ripe and must be dismissed.

IV. Conclusion

For the reasons more fully explained above, plaintiff's takings claim must be dismissed pursuant to RCFC 12(b)(1) because it is not ripe. Accordingly, defendant's motion to dismiss, ECF No. 19, is **GRANTED**. The clerk's office is directed to **ENTER** final judgment for defendant **DISMISSING** plaintiff's amended complaint, without prejudice.

IT IS SO ORDERED.

---

[7] This is not a simple denial of access claim. The evolution of historic access to the property presents complexities that are demonstrated by plaintiff's negotiations with both the State and private landowners. See ECF No. 16 at 4; ECF No. 24 at 30; ECF No. 24-1; ECF No. 24-2; ECF No. 24-3. Until plaintiff presents a completed right-of-way application to BLM, which might or might not include a request for a right-of-way along the cherry-stem road, and BLM has issued a final decision on that application, the issue of access to the property remains uncertain and unpredictable.

        <u>s/ Patricia Campbell-Smith</u>
PATRICIA CAMPBELL-SMITH
Judge